**SMITH et al. v. K. M. VAN ZANDT LAND CO. et al.** (No. 10444.)

(Court of Civil Appeals of Texas. Fort Worth. Dec. 16, 1922.)

**I. Injunction ⟨key⟩62(3) — Violation of stipulation in deed as to use of land can be enjoined.**

Where a deed contained a stipulation that land conveyed was to be used only for residence purposes, with a clause that the title should be forfeited on violation of the conditions of the stipulation, a subsequent purchaser can be enjoined from excavating the lot to a depth of ten feet, and lessening the value of property in the vicinity even if there were no provision for forfeiture of title to the original grantor.

**2. Injunction ⟨key⟩136(2)—Temporary injunction to prevent excavation contrary to restrictions in deed held proper.**

Where a stipulation in a deed provided, among other things, that the land should be used only for residence purposes, with a condition of forfeiture of title for violation of the stipulation, a temporary injunction forbidding an excavation to remove gravel, and which the owner claimed he would fill after removing the gravel, was properly granted.

**3. Injunction ⟨key⟩189—Excavation on lot whose use was restricted by covenant to residential purposes should be permitted, on showing that excavation will be filled.**

Where a deed to land platted as part of an addition to a city contained a stipulation that the land conveyed should be used only for residential purposes, in a suit by the original vendor to enjoin a subsequent purchaser from making an excavation, the purchaser should be allowed to excavate and sell gravel from the land if the excavation will be promptly filled, and the work can be performed in such time that it will not materially depreciate the market value of other property in the same addition for residence purposes.

Appeal from District Court, Tarrant County; Ben M. Terrell, Judge.

Suit by the K. M. Van Zandt Land Company and others against Tom Smith and another. From an order granting a temporary writ of injunction, defendants appeal. Affirmed.

John W. Estes, of Fort Worth, for appellants.

Flournoy & Smith, of Fort Worth, for appellees.

DUNKLIN, J. [1] The K. M. Van Zandt Land Company, a private corporation, laid out and platted a tract of land known as the Van Zandt Addition to the city of Fort Worth. The land was divided into lots, blocks, streets, and alleys, and was platted for the purpose of sale. The plat was duly filed for record in the deed records of Tarrant county. Thereafter the company sold lot 7 out of block 19 to Jacob W. McMurray. The deed to McMurray contained a stipulation reading as follows:

"This conveyance is, however, made upon the following conditions and limitations: That this lot is sold for residence purposes only and that if when said lot is improved the actual value and cost of such improvements be less than $1,000, or if intoxicating liquor shall ever be sold on said premises or any part thereof, then, in either event, said premises hereby conveyed shall immediately revert to the grantor herein and its legal representatives and the estate hereby granted shall thereby terminate."

⟨key⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

All other deeds to other lots in the addition contained the same provision.

McMurray sold and conveyed the lot so purchased by him to Andrew Doyle, who improved the same by erecting a residence thereon. Thereafter one Tom Smith entered into a contract with Doyle, by the terms of which he obtained from Doyle permission to remove gravel from said lot. There was a bed of gravel lying underneath the surface of the lot beginning about 2 feet below the surface of the ground and extending to a depth of 10 feet below the surface. The bed of gravel is coextensive with the boundaries of the lot, and the lot is 50x130 feet in area. In order to remove this gravel, it is necessary to remove the house and then scrape off the earth for a depth of about two feet and excavate the gravel below that level. Under the agreement so made, Smith bound himself to pay to Doyle the sum of $600 for the gravel, to remove the house from the lot, and after taking from it all the gravel, to fill up the hole, which would be at a depth of 10 feet, with earth, and after so filling the lot to replace the house thereon. The Van Zandt Land Company instituted this suit against Smith and Doyle to restrain the carrying out of that contract. The basis of the claim for injunction was that such action would be in violation of the covenant in the deed under which Doyle held title, not to use the lot for any other than residence purposes; and from an order of the court granting a temporary writ of injunction to restrain such action, the defendants have appealed.

In addition to the allegation of a violation of the covenant or condition contained in the deed, it was alleged by plaintiff, in effect, that the contract on the part of Smith to refill the lot after the excavation and the gravel was removed was not made in good faith, and with no intention to perform it, and that the lack of such good faith and intention was known to Doyle at the time the contract was made. In other words, plaintiff's contention, in substance, was that the contract which Doyle so made with Smith was but a subterfuge adopted for the purpose of realizing more from the gravel than he could by the sale of the lot.

In addition to a general denial by both defendants, the defendant Doyle further alleged, among other things, that one of his purposes was to have the gravel underneath the surface of his lot replaced with soil in order to better grow trees and shrubbery upon the lot, and thereby make it more desirable for residence purposes.

According to testimony shown in the statement of facts, Smith intended to sell the gravel for use in buildings in the city of Fort Worth, but that the cost of refilling the lot, after the excavation of the gravel there-

from, plus the $600 which he had agreed to pay Doyle for the gravel, would exceed the amount he would realize from the sale of the gravel less the reasonable hire of hauling it to market. It further appeared from Smith's own testimony that he owned two teams and two wagons which he used in the gravel business, but that aside from that he owned no other property out of which Doyle could collect the amount it would require to refill the lot in the event Smith should breach his contract to refill it after the gravel was removed, and that such cost would be approximately $970. The $600 which Smith agreed to pay for the gravel was evidenced by his promissory note, which was secured by a chattel mortgage on the two teams and two wagons, containing a further provision that any surplus realized by a foreclosure of the mortgage over and above the amount required to satisfy the note could be applied by the holder to the liquidation of any other liability of Smith to Doyle. It further appeared from the testimony that plaintiff owned other lots just across the street from the lot in controversy which were being offered on the market for $450, which Smith could have purchased outright, and which contained gravel to the same extent as Doyle's lot. It further appeared that several other persons had purchased lots in the same addition, and some of those who owned lots in close proximity to Doyle's lot joined plaintiff in the suit, and also sought the same injunction which plaintiff prayed for.

According to testimony offered by the plaintiff, the excavation so contemplated by Smith and Doyle would tend to impair the market value of the property generally in that addition, and especially that of lots in close proximity to Doyle's lot. We think it clear from the authorities that the violation of the restriction contained in the deed under which Doyle held title, and which was a covenant running with the land, could be restrained by injunction, under the rules of equity, even though there was no provision in the deed for the forfeiture of title to the grantor for a violation of that restriction. Lowrance v. Woods, 54 Tex. Civ. App. 233, 118 S. W. 552; Anderson v. Rowland, 18 Tex. Civ. App. 460, 44 S. W. 911; 2 Devlin on Deeds (3d Ed.) § 990b; 2 Pomeroy, Equity Jurisprudence, § 1386; Semple v. Schwarz, 130 Mo. App. 65, 109 S. W. 633; Noel v. Hill, 158 Mo. App. 426, 138 S. W. 364; Cornish v. Weissman, 56 N. J. Eq. 610, 35 Atl. 408.

[2] According to Smith's testimony it would require at least four months to complete the work by using his two teams and wagons, and hiring two other teams and wagons; and according to his estimate the gravel to be excavated would amount to 1,200 or 1,300 cubic yards. According to his further testimony, he had not engaged the sale of the

gravel to any one, but thought he would be able to find ready market for it; nor had he made any arrangements to secure dirt with which to refill the excavation to be made in the lot, but knew of some about three-eighths to one-half of a mile distant which he believed could be obtained for 25 cents per cubic yard, which was the usual selling price. It further appeared that there is a school building in the same addition about 380 feet distant, and that, if the proposed excavation should be left unprotected, it would endanger the lives of children, should they enter it. Doyle testified that he intended to utilize the proposed excavation in part for a cellar under his residence when replaced on the lot; he further testified that a further reason for his decision to sell the gravel underneath the surface of his lot was that he desired to grow trees on his lot, but that same would not grow unless the gravel underneath its surface is replaced with earth. But other witnesses contradicted him in that respect, their testimony being that trees are now growing well on other lots in the same vicinity.

Even though it could be said that the excavation and refilling of the lot in the manner proposed by Smith would be of such temporary duration as not to amount to a breach of the covenant contained in the deed, yet the injunction granted by the trial court can and should be sustained upon the implied finding that there was no reasonable probability that Smith would refill the lot after removing the gravel therefrom. Accordingly the order of the trial court granting the temporary writ of injunction will be sustained.

[3] The majority of the court, however, are of the opinion that upon the trial of the case on its merits Doyle should be accorded the right to sell the gravel on his lot if it can be shown by proof that the excavation therefor will be promptly refilled, and that the whole work will be performed in such length of time, that the same will not materially depreciate the market value of other property in the same addition for residence purposes. The writer, however, is of the opinion that it conclusively appears from the evidence that the work contemplated by Doyle and Smith, in view of the time necessarily required to complete it, and the unsightly appearance created thereby, will necessarily be a violation of the restriction contained in the deed under which Doyle claims title, and in view of the further fact that, if Doyle can thus use his lot, others owning lots in the same addition can put their lots to a like use, and thus the building restriction would be practically destroyed.

For the reasons noted, the order from which the appeal is prosecuted is affirmed.