**W. S. EAKENS, Appellant,**

v.

**J. G. GARRISON et al., Appellees.**

No. 6483.

Court of Civil Appeals of Texas.

Amarillo.

March 21, 1955.

Rehearing Denied April 18, 1955.

Simpson, Clayton & Fullingim, Amarillo, for appellant.

E. Byron Singleton, Amarillo, for appellees.

PITTS, Chief Justice.

This is an appeal from an order of the trial court permanently enjoining the owner of a night club from violating restrictive covenants and city zoning ordinances dedicating and limiting for residential purposes only certain realty located in the Ridgemere Addition in the City of Amarillo, Texas, and to have an alley separating the north and south halves of Block 1 in the said addition declared and adjudged to be a public alley.

Appellees, J. G. Garrison and twenty other land owners in the Ridgemere Addition of the City of Amarillo, filed a suit in the nature of a class suit, representing and acting for themselves and on behalf of all other similarly situated land owners in the said addition, against appellant, William S. Eakens, individually and doing business as Avalon Club, seeking the relief previously herein referred to. The case was tried to the court without a jury and judgment was rendered enjoining appellant and his agents permanently from using Lots Nos. 27 and 28 and other lots in the south half of Block 1 in the Ridgemere Addition of the City of Amarillo for parking purposes in connection with the operation of his night club or for any purposes other than residential purposes or from using the alley, which was declared and adjudged to be a public alley, de facto alley, running east and west and separating the north half of Block 1, Ridgemere Addition, from the south half thereof, for parking purposes or otherwise than a public alley and further enjoining appellant from blocking the said alley.

Appellant perfected an appeal from the judgment and presents 12 points of error. The controlling issues to be determined, however, are whether or not the trial court was justified in granting the relief sought under the record presented here and the law governing such matters.

The record reveals that Blocks 19, 1, 2, and 3, of Ridgemere Addition, in the order named from east to west, border on and are adjacent to the south line of Northeast 8th Avenue in Amarillo, along which avenue runs also U. S. Highways Nos. 60 and 66, making the same a business thoroughfare adjacent to which commercial or business establishments have been operating for many years. For as many years, all lots located in the north half of each of the said blocks have been classified and used as business property but for the same period of time all lots in the south half of each of the said blocks have been classified and used exclusively for residential purposes, so limited by plat and by restrictive covenants shown in deeds and by city ordinances. Such is particularly true of the lots

located in Block 1 and certainly true concerning the lots here involved in this action. The lots in the south half of each of the said blocks face and are adjacent to Rule Avenue, which runs east and west and is parallel to Northeast 8th Avenue and one block south of the same. Blocks 24, 7, 6, and 5, of Ridgemere Addition, in the order named from east to west, are adjacent to and face north on the south side of Rule Avenue. The use of these said blocks are likewise restricted and the use thereof limited for residential purposes only.

Since November 17, 1947, appellant has owned and operated the Avalon Night Club located on Lots 15 and 16 in the north half of Block 1, adjacent to and facing Northeast 8th Avenue and U. S. Highways Nos. 60 and 66 with two lots in the same block located east of the night club and several lots in the same block located west of the night club, the premises of which extend south to an alley which separates the north lots of the said block from the south lots of the said block. Appellant claims ownership of Lots 14 to 18, both inclusive, in the north half of Block 1 with Lot 14 adjacent to the night club premises on the east and Lot 17 adjacent to the said premises on the west. Appellant has quite an investment in his night club, which building proper covers about 8,000 square feet, is well-furnished and the business brings a good return on the investment. The night club will accommodate about 500 customers but is usually quite full with an attendance of about 430 or 440, making it necessary to have parking space nearby for 100 to 125 automobiles during the week nights and 100 to 150 automobiles on Saturday night, while appellant claims there is now parking space for about 90 automobiles in the immediate vicinity of the night club and a need for more space for 10 to 35 automobiles during the week nights and 60 to 110 automobiles on Saturday night. The night club sells beer, soft drinks, ice, cigarettes, potato chips and other such quality of goods to the customers who dance, eat, drink and enjoy themselves socially until midnight when the club closes. Some customers get drunk and are disorderly occasionally but such are cared for usually by bouncers or by local officers of the law. Appellant employs 15 people to conduct the nightly business with four in the band, five waitresses, a bartender, one or two floor men or bouncers, a ticket seller, a bookkeeper, and such other helpers as may be necessary to keep the premises in order. Within the last year or so, appellant had bought Lots 27 and 28 of the south half of Block 1, both of which face Rule Avenue and are within the restricted area. They are located immediately south of the Avalon night club, separated from it by the alley previously mentioned, and these two lots each have a residence thereon. Appellant bought these said lots for the intended purpose of removing the residences and converting the lots into a parking lot for the use of his night club customers. Such acts and intentions of appellant resulted in the filing of this suit by appellees to prevent damages and further disturbances to them by the extension or enlargement of an alleged public and private nuisance into an area restricted and limited for residential purposes only. Seven of appellees reside within the south half of Block 1, Ridgemere Addition, two of whom reside within very close proximity to the rear part of the night club; nine appellees reside within the north half of Block 7 of the said addition with all houses facing Rule Avenue and within the next block south of the night club; and five appellees reside within the restricted area near the night club.

At the request of appellant, the trial court filed findings of fact and conclusions of law in support of its judgment. These are lengthy and only the most relevant parts will be here referred to. The trial court found that all lots in the north half of Blocks 19, 1, 2, and 3 of Ridgemere Addition, adjacent to and bordering on Northeast 8th Avenue, were zoned and used for commercial purposes while all lots in the south half of the said blocks facing Rule Avenue and all other lots in other blocks mentioned adjacent to Rule Avenue were by dedication, restrictive covenant, city zoning ordinances and actual use, limited to and used for residential purposes only and that the restrictive covenant itself in the plat and

dedication of date August 14, 1926, authorizes the filing of injunction proceedings against any person or persons who threaten or attempt to violate the restrictions; that the neighborhood scheme of restricted use of the south half of Block 1 facing Rule Avenue in the Ridgemere Addition, including Lots 27 and 28 here in controversy, has retained its residential characteristics to the complete exclusion of all commercial characteristics and that such continues to remain so; that appellant has adequate parking area adjacent to his place of business or available to him near by and is not under any unusual strain or hardship for available parking space for patrons of his night club; that appellees have not, in any way, by acts, deeds, declarations, or otherwise waived any right or rights to insist upon an observance of the dedication, restrictive covenants, zoning ordinances and former use of the realty involved; that appellant has admittedly threatened to violate the restrictive covenant and city zoning ordinances and has actually already been violating the same by using the north 30 feet of Lots Nos. 27 and 28 of Block 1 and the alley separating the said lots from the club for parking purposes and by such use blocking the alley to the further damages of appellees; that the alley separating the lots in the north half of Block 1 from the south half of Block 1, and particularly separating appellant's Lots 15 and 16, on which the club is located, from Lots 27 and 28 in the south half of Block 1, is a well-defined public alley and has been openly and notoriously used generally by the public since 1940 and therefore so used for a period of more than 10 years prior to the filing of this suit; that the same has been so used in excess of 10 years uninterruptedly and adverse to appellant and his claims, for all of which reasons the same is a public alley, a de facto alley and a prescriptive alley; that a portion of the said alley has been dedicated for and used by certain utilities operating within the city; that appellant's night club patrons park their many cars five nights every week too close already to the private homes of some of appellees and have already begun to encroach further into the restricted area; that appellant has already expanded his night club parking lot across the alley and into the restricted area of the south half of Block 1 and is conducting his night club in a noisy, disorderly and undisciplined manner; that most, if not all, of appellees and their families are disturbed each night by appellant's night club patrons, particularly as they leave the club about midnight and thereafter, as a result of flashing of automobile lights, racing of the engines and other noises of their automobiles, slamming of doors, arguments, loud and boisterous talking, the use of vulgar, vile and profane language, some singing and merrymaking while others are wandering and fighting in a drunken state, with both men and women being guilty of immoral and indecent conduct; that such nightly conduct disturbs and almost destroys the enjoyment of appellees' home life, preventing their normal rest and sleep at night; that appellees are working people, most of whom rise early in the morning and therefore need normal rest and sleep at night; that the said conduct of appellant's patrons constitutes in fact both a private and a public nuisance; that an enlargement of the parking space for appellant's patrons by permitting him and them to encroach further upon the restricted areas would cause more and greater noises, disturbances and interferences with appellees' home life; that appellees have no adequate means of money measurements at law to compensate them for the wrongs imposed upon them by appellant and his night club patrons.

The evidence heard by the trial court is lengthy, with the statement of facts covering 530 pages. Following its findings of fact, the trial court gave references to the evidence and cited the pages in the statement of facts in support of its findings. Without detailing the evidence, suffice it to say that a careful examination of the evidence reveals that the material facts found by the trial court are well-supported by evidence of probative force.

Based upon the evidence presented and the facts found, the trial court filed its conclusions of law in support of its judgment

and cited authorities in support thereof. Among them, it concluded that the restrictive covenant in the deed conveying Block 1 of the Ridgemere Addition is a valid and subsisting covenant which prohibits any use of any of the lots in the south half thereof facing Rule Avenue for any purpose other than residential purposes; that such prohibits appellant from using any part thereof for a parking lot in expanding the space for the operation of his Avalon night club; that the City of Amarillo zoning ordinances likewise prohibit the use of such lots for any purposes other than residential and dwelling purposes; that the present use of the northern portions of Lots 27 and 28 of Block 1 for parking purposes violates the restrictions and such use constitutes a public nuisance and a private nuisance; that the threatened use of all of Lots 27 and 28 by appellant as a parking lot for his night club would further violate the restrictions and would enlarge and increase the nuisance so as to constitute both a greater public nuisance and a greater private nuisance to appellees; that appellees are entitled to the injunctive relief sought by way of equitable enforcement of the restrictive covenant since no adequate remedy of law exists to protect them otherwise; that neither prescription nor lapse of time can be relied upon to establish a right to maintain a public or private nuisance; that a public alley may be acquired by prescription by a public use of a right-of-way openly, continuously and uninterruptedly for 10 years or more with the actual or implied knowledge of the owner; that to prove prescription, it is sufficient to establish general use by the public without interruption for at least 10 years.

The rules of law that govern restrictive covenants of the character set out in the deed to the lots here in controversy are well-recognized. Such covenants have been enforced and the rights of owners thereof have been upheld by courts of equity where it appears that a general building scheme or plan for the development of a tract of land has been adopted and designed for such a purpose and particularly where such a general scheme or plan still exists and is observed as is shown to be true in the case at bar. Such restrictive covenants can be enforced at the instance of the original grantor or any subsequent purchaser. Faubian v. Busch, Tex.Civ.App., 240 S.W.2d 361 and other authorities there cited; Benbow v. Boney, Tex.Civ.App., 240 S.W.2d 438, 12 Tex.Jur. 144–145, Par. 94 and pages 174–175, Par. 109; Lowrance v. Woods, 54 Tex.Civ. App. 233, 118 S.W. 551.

Appellant contends that appellees did, by acts, deeds or declarations, waive their rights to insist upon an enforcement of the restrictive covenant in question but the trial court properly found to the contrary. As a result of such contentions, the burden rested upon appellant to establish waiver by evidence of probative force, which he failed to do. Braswell v. Woods, Tex.Civ.App., 199 S.W.2d 253–255, and other authorities there cited.

Appellant also contends that the restrictive covenant is no longer in force and effect because appellees have abandoned such restrictions and have acquiesced in changes made in violation thereof for which reason appellees are estopped from seeking to enforce such restrictions. The trial court found and concluded to the contrary since appellant had the burden to establish such claims but he failed to raise and establish any such by any evidence of probative force. Faubian v. Busch, supra.

In the case of Ragan v. Mosher, Tex.Civ. App., 225 S.W.2d 438, 441, cited and relied on by appellant, the court there held in part:

"* * * that in order to establish a waiver or abandonment of a general scheme or plan for the development of a particular area, it must be shown that such plan has been violated to such an extent as to reasonably lead to the conclusion that it had in fact been abandoned, and that unsubstantial violation thereof or the fact that a complainant has not objected to previous violation of such restrictions, particularly where they did not immediately affect the enjoyment of his own premises, will not prevent him from maintaining an ac-

tion for injunctive relief to prevent substantial violations thereof, or a violation which would materially affect his own premises."

Appellant copied in his brief along with other language therein used this very quotation which is supported by numerous authorities, but he failed to produce evidence to bring himself and his claims within that part of the rules quoted that may apply to his claims. Under the record presented here, these quoted rules support appellees' contentions here made.

"A nuisance may be something that is injurious to personal or property rights, or to both. It may be of such a character as to impair health, threaten safety, shock the moral sensibilities, or offend the senses; or it may constitute an encroachment upon or injury to property * * * When a nuisance actually exists it is not excused by the fact that it arises from conduct of a business which is in itself lawful or useful, or from a condition which is necessary to the operation of the business." 31 Tex.Jur. 419, Par. 9.

"Such places may, however, become nuisances by reason of their surroundings or the manner in which they are conducted. A baseball park, for instance, is not a nuisance at law, although it may become a nuisance in fact if the park has degenerated into a gathering place for rowdies and other boisterous and indecent persons. Nor is a dance hall a nuisance per se, but it may become a nuisance in fact if accompanied with drunkenness, profanity, boisterous language or disorderly conduct." 31 Tex.Jur. 435, Par. 23.

"The fact that the condition or annoyance complained of existed prior to the advent of the complaining party to the neighborhood does not make it any the less a nuisance." 31 Tex.Jur. 425, Par. 13.

"It seems to be fairly well settled by the decisions in this state that in an action to abate a nuisance, public or private, prescription or limitation is no defense." Hughes v. Jones, Tex.Civ.App., 94 S.W.2d 534, 536, and other authorities there cited.

A right to use private property as a public street or alley may be acquired by prescription. Whether such has been so acquired is a fact question to be determined by the trier of facts, which found in favor of appellees in this instance. Such a right may be so established if the owner permits the public to use the right-of-way openly, continuously and uninterruptedly for a period of 10 years or more. Or it is sufficient to establish such by showing that the general public used the same under a claim of right, and not by mere permission of the owner, without interruption or any substantial change for at least 10 years. Boone v. City of Stephenville, Tex.Civ.App., 37 S.W. 2d 842; Robison v. Whaley Farm Corporation, 120 Tex. 633, 37 S.W.2d 714, rehearing denied with additional opinion 40 S.W. 52; Dortch v. Sherman County, Tex.Civ.App., 212 S.W.2d 1018; Tribble v. Dallas Railway & Terminal Co., Tex.Civ.App., 13 S.W.2d 933.

Use is the sole test for determining whether a right-of-way has become a public street or alley by prescription. To establish such, there must have been an uninterrupted use of the way by the public for a least 10 years with the actual or implied knowledge of the owner or adversely under color or claim of right and not merely by owner's permission. 39 Tex.Jur. 522–523, Par. 11, and authorities there cited.

Appellant asserts some sort of right by reason of the provisions of City Ordinance No. 1752 finally passed by the Amarillo City Commission on April 19, 1949. We find no conflict between the restrictive covenant and the provisions of the said city ordinance. However, assuming that there may be such conflict, it has been held that the power of a city to zone cannot abrogate a restrictive covenant in existence at the time the city ordinance was passed as was the case here. Spencer v. Maverick, Tex.

Civ.App., 146 S.W.2d 819, 825; Faubian v. Busch, supra.

As a result of a careful examination of the record and the briefs, we find no reversible error. Appellant's points to the contrary are all overruled and the judgment of the trial court is affirmed.